## Commonwealth ex rel. *v.* Anchor Building & Loan Association.

*Building and loan association—Insolvency—Directors.*

It cannot be charged that the directors of a building and loan association are responsible for its insolvency where the evidence shows that the directors had no personal knowledge of any illegal or fraudulent acts in the management of the affairs of the association; that examination was made of the financial affairs of the association by the committee duly and legally appointed for that purpose; that their reports made to the board of directors, uniformly showed that the association was in a solvent condition; that all of the directors who were examined, and whose evidence was not attempted to be contradicted, testified that they believed that the association was solvent, and that the first intimation they had that the association was in financial difficulty, was when an examination was made by the bank examiners.

The action of the directors of a building and loan association in prematurely maturing stock, cannot be regarded as grossly negligent, where it appears that their action was taken after reports by duly appointed com-

mittees of the board on the financial condition of the association, and with the advice of counsel.

*Corporations—Directors—Gratuitous mandatories.*

Directors of corporations are gratuitous mandatories, and as such are held to but ordinary skill and diligence, and are personally liable only when they are guilty of fraudulent conduct, or of acts clearly ultra vires.

*Building and loan associations—Directors—Overborrowing.*

The directors of an insolvent building and loan association cannot be deprived of their rights as creditors to participate in the assets of the association, on the ground that they had borrowed on behalf of the association beyond its legal capacity, where no allegation is made that the borrowed money did not go into the association, and it is not made clear to what extent, if any, there was an overborrowing, or that the overborrowing, if any, was necessarily an act of gross negligence.

Argued March 13, 1902. Appeal, No. 13, March T., 1902, by Adaline Noel et al., from decree of C. P. Dauphin Co., confirming report of auditor in case of Commonwealth ex rel. Henry C. McCormick v. Anchor Building & Loan Association. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to report of James B. Ziegler, Esq., auditor, appointed to distribute the assets of the Anchor Building & Loan Association of York, Pennsylvania.

On exceptions to the auditor's report, WEISS, J., filed the following opinion:

Another claimant upon this fund is Henry W. Heffener, who was president and a director of the association, and who with other directors, became indorsers on notes given by the association which were discounted by a bank and which he and they were obliged to pay in whole or in part. One of the notes was given April 23, 1894, for $10,000, and another January 7, 1895, for $5,000, upon which and the renewals, the association paid the discounts to February 29, 1896, respectively. The proceeds were received by the treasurer by whom they were applied at the instance of the board of directors to the extinguishment of the outstanding liabilities and to borrowing and withdrawing stockholders.

Participation on an equality in the distribution of this fund on the part of Heffener and others, also directors, who made

payments upon the judgments obtained against them as in-
dorsers, is resisted by creditors not associated with the manag-
ing officers or directors, for the reasons that the moneys borrowed
by the association were in excess of the amount authorized by
law ; that Heffener and others were guilty of negligence in
the management of the affairs of the association in making im-
provident and insecure loans and in prematuring shares of stock,
through which losses were sustained and insolvency ensued.
It does not follow that because loans were made beyond the
amount authorized by law, this class of creditors is excluded
from participation in this fund.   The borrowing money was
not deflected to improper or unauthorized uses and it must be
assumed to be, and doubtless is, among and part of the assets
in the hands of the accountant.   It is a case of one class of
creditors denying the right of another class, which borrowed
beyond the amount authorized by law, from a share in the fund,
which was increased by the excess borrowed, and there is no
known rule that for this reason excludes the latter class from
a share in the proceeds or postpones that class to the former
class in a scheme of distribution.

   Nor is the contention tenable that liability ensues because
injudicious or insecure investments were made, among others
to Boll, the secretary, and Fisher, the attorney, who were also
directors of the association.   The by-laws authorize the em-
ployment of counsel whose duty it was to examine titles, make
searches, draw instruments relating to investments and ap-
prove the security of deeds, titles, bonds, judgments, etc.   Ap-
plication for a loan by a stockholder was required to be in
writing and submitted to a committee of three directors to
make report to the board at its next meeting.   The manifest
and chief duty of this committee was to investigate the value
and desirability of the security proposed to be given for the
loans, and those made to Boll and Fisher were subject to a like
proceeding and scrutiny.   It is true that Heffener and the
other claimant directors cannot shield themselves behind the
report of the committee, but they had a right to believe that
the members of the committee reported their best judgment
upon the nature and value of the security offered.   These
claimants might or may have arrived at the same conclusions
as the committee.   The latter doubtless saw the properties and

investigated the kind and nature of the securities.    There is no proof that there was wilful disregard of, or indifferent attention paid to, the discharge of their duties.    Members of a governing body have a presumptive right to rely upon a report made by a committee of the body upon matters relating to values of securities for loans, and are protected, when, as in this case, the fault imputable to the members of the committee is an unfortunate result in the exercise of judgment.    The presumption is that the other directors informed themselves of the probable accuracy of the values of the securities for loans either from the reports of the committee or their general knowledge of the subject or both.    The report is neither a shield nor a weapon.    What the directors did or omitted to do protects or punishes, and the evidence in this case so far as it relates to inadequate security, does not warrant the infliction of pains by way of postponing the claimants to the creditors not connected with the management of the association.

If any losses were sustained by aught the attorney employed by the association did or omitted to do in the line of his duty, no deprivation of any right which the claimant directors otherwise had can be visited upon them.    The board of directors had authority to employ counsel and they exercised caution in selecting one who was reputed and doubtless was, well versed in the duties intrusted to his care.

The employment was of a character with which directors are not familiar and with the nature of which they are not expected to acquire knowledge or attain proficiency.    The board had a right to rely upon a report made by their attorney and in acting upon it, merit no exclusion or postponement in this distribution if loss ensued in consequence of any act done in that capacity and in the course of professional duty.

Considerable stress is laid in the charge that the series of stock were closed and declared matured before the earnings warranted a foreclosure, and there is scarcely a doubt that loss ensued and probable insolvency was precipitated, if not caused, by prematuring these series of stock.    The directors were bound to a diligent observance and exercise of duty in the management of the affairs of the association, and to bring a reasonably intelligent quantum of skill to the discharge of it.    They are not insurers against insolvency nor must they be ex-

pert accountants nor required to become such. They are not obliged to give the same time and attention to the management of the business as a person may reasonably be supposed to bestow upon his own affairs. They are not chargeable during the course of conducting the business with the possession of that most dangerous of all kinds of knowledge, usually acquired after the fact. They examined the statements submitted to them by the secretary and counsel who were familiar with matters relating to building associations which disclosed a sufficient accumulation of funds to warrant the closing of a series in full. They depended upon these officers and confided in their integrity as well as in the correctness of the statements.

Apparently the statements warranted belief in their accuracy. There is nothing to indicate purposed misstatement. The secretary says it happened that the series were run out too soon by six months or a year, and while he is not a disinterested witness, there is nothing to show misrepresentation. It is altogether probable that the most searching scrutiny on the part of these directors would not have disclosed inaccuracies and they are not chargeable with expert skill nor answerable for not undertaking the likely impossible task for them of verifying the statements. Nothing by way of dishonesty or fraud is imputed in them. They gave time and loaned money or credit to the association. They had, and doubtless merited, the confidence of the business community. They seem to have possessed general business fitness, exercised a diligence fairly commensurate with the character and extent of the business, were strictly honest in their dealings with, and not unfaithful in their conduct of, the affairs of the association. Measured by the standard of their duty, we cannot say that they fell short in the observance of it to an extent sufficient to incur liability. Had they known that the concern was insolvent, or had their duties required such constant attention to, and supervision over, the somewhat complex accounts and affairs as to invite the reasonable conviction that they could and ought to have acquired knowledge of insolvency, or that the manner of conducting the business would necessarily result in insolvency, a different rule would apply. The directors were paid, but the amount was small and altogether disproportioned in amount to the responsibility now sought to be imposed upon them. We do not see

that the duties of Heffener, the president, entailed more insight and investigation into the affairs of the association than those of the other directors, and in respect to the matters under consideration, he acted, being also a member of the board, in the capacity of a director.    To hold the directors liable in this case, the hard rule, deterrent in its effects, would have to be applied, that they were bound to know from an examination and investigation of the varied securities, resources and liabilities that the association was insolvent.    We apprehend that if a cashier of a bank would report to its board of directors that he had money earned in the drawer to pay a dividend, they would not be required to escape liability, to verify the statement by an examination of the notes, securities, discounts and books.    To go there and see it in the drawer would not prove that it was an earned product, and it is probably not an indignity to the average bank director to say that such an examination by him would not prove a fruitful contribution towards immunity from insolvency.    There is no provision in the acts of assembly governing building associations, nor in the rules relating to this one which imposes greater responsibility upon directors than the rule which we have endeavored to formulate as applicable to the case in hand.    Strict integrity and loaning the money paid by the stockholders to the clerk for instalments, fines, interests, etc., who is directed to pay the same to the treasurer, reasonable skill, time and diligence in the management of financial affairs of the association, and care in, and according to the duties imposed, and the usages of, the business, are the requisites to escape liability.    That we think the testimony shows was fairly bestowed by the claimant directors.    What these directors seem to have contributed to the wreck was a lack of capacity to grasp fully the manifold matters and problems involved and necessary to be comprehended to wind up the various series and affairs of the institution properly, added to the confidence mistakenly placed in the attainments of the secretary and attorney.

The influence from all the surroundings is not strained that the shareholders knew the character, reputation and pursuits of those intrusted by them with the management, and while they had a right to expect better results, they cannot convert misfortune unaccompanied with fraud or gross dereliction of

101, (1902).]    Opinion of Court below—Arguments.

duty, into culpability.   We are of the opinion that the auditor reached correct conclusions and the exceptions to his report are accordingly overruled and the report confirmed.

*Error assigned* was the decree of the court.

*Charles A. Hawkins,* with him *Niles & Neff,* for appellant.— The president and directors of the Anchor Building and Loan Association stand charged with knowledge of its financial condition while under their care.   If not actually, they were constructively, informed of the grossly insolvent condition of the concern.   The law imputes to them such knowledge : Kersteter's Appeal, 149 Pa. 154 ; Kisterbock's Appeal, 51 Pa. 483 ; James Clark Co. v. Colton, 49 L. R. A. (Md.) 701 ; Montgomery v. Exchange Bank, 5 Cent. Repr. (Pa.) 261.

No board of directors can successfully maintain that they have exercised due care in declaring a dividend (or maturing stock in the case of a building association), unless as an essential preliminary step they make all proper and reasonable efforts to know whether their assets are greater than their liabilities : Mechanics' & Workingmen's Building & Loan Association's Estate, 13 York Legal Rec. 37 ; Charles Tyrell Loan & Building Association v. Haley, 163 Pa. 301 ; Hun v. Cary, 82 N. Y. 65 ; Delano v. Case, 17 Ill. App. 531.

Where directors borrow in excess of the legal limit they are personally liable for the money so borrowed : Looker v. Wrigley et al., L. R. 9 Q. B. Div. 397 ; Richardson v. Williamson, L. R. 6 Q. B. Cases, 276 ; Fidelity Insurance, Trust & Safe Deposit Co. v. West. Penn., etc., R. R. Co., 138 Pa. 494.

*N. M. Wanner,* with him *Geo. S. Schmidt, Ross & Brenneman* and *Horace Keesey,* for appellee.—The directors are only held to the use of ordinary care, and are not liable for honest mistakes of judgment, especially where they act under the direction of legal counsel: Spering's Appeal, 71 Pa. 11 ; Watts's Appeal, 78 Pa. 391, 392 ; Swentzel v. Penn Bank, 147 Pa. 150, 151 ; Sewickley Dairy Co.'s Assigned Estate, 198 Pa. 63.

A gratuitous bailee or mandatory is liable only for fraud, or for such gross negligence as amounts to fraud : Hibernia Building Assn. v. McGrath, 154 Pa. 296 ; Swentzel v. Penn Bank, 147 Pa. 140.

And the corporation may prefer and protect officers for advancement made for the benefit of the corporation : Moller v. Keystone Fibre Co., 187 Pa. 553.

OPINION BY WILLIAM W. PORTER, April 21, 1902:

The receiver of the Anchor Building & Loan Association filed an account. This was duly confirmed and an auditor appointed to make distribution of the fund. A controversy arose between general creditors of the association and creditors who were also directors. Eliza A. Tash, one of the general creditors, has appealed to this court and contends that the claims of the directors as creditors should be postponed because (1) the insolvency of the association was due to the negligent acts of the directors in prematurely maturing stock in ignorance of the financial condition of the association, and (2) because the directors exceeded the statutory limit in borrowing for the association.

Testimony was taken before the auditor who, in an elaborate report, finds, inter alia, that there is nothing whatever in the evidence to show that the directors had any personal knowledge of any illegal or fraudulent acts in the management of the affairs of the association ; that examination was made of the financial affairs of the association by the committees duly and legally appointed for that purpose ; that their reports made to the board of directors, uniformly showed that the association was in a solvent condition ; that all of the directors who were examined, and whose evidence was not attempted to be contradicted, testified that they believed that the association was solvent and that the first intimation they had that the association was in financial difficulty, was when an examination was made by the bank examiner. The findings of the auditor are confirmed in an opinion by the court below. Examination of the evidence has been made by this court. As a result the findings are confirmed.

No allegation is made of any fraud attempted by the directors who are asking repayment of legitimate loans made to the company. No attempt on the part of the directors seems to have been made to secure themselves at the expense of other creditors. The error, which resulted in the financial ruin of the association, was committed by the directors in prematurely

maturing stock. The action taken by the board in maturing the several series was, as found by the auditor, after reports by duly appointed committees of the board upon the financial condition of the association, and with the advice of counsel. Action so taken cannot be regarded as grossly negligent. Certainly it cannot be regarded as fraudulent. This being so, the directors were not liable for the unfortunate results of their management, since they are held to but ordinary skill and diligence and are personally liable only when they are guilty of fraudulent conduct or of acts clearly ultra vires: Swentzel v. Penn Bank, 147 Pa. 140; Watts's Appeal, 78 Pa. 391; Spering's Appeal, 71 Pa. 11. This rule of law is based upon the fact that directors are gratuitous mandatories. In the case at bar the insignificant payments to directors when attending meetings of the board, were not compensation and did not change the measure of duty and liability of the directors.

The second proposition upon which a reversal is requested is that the directors borrowed on behalf of the association beyond its legal capacity, and by so doing deprived themselves of equal participation with other creditors in the liquidation. No allegation is made that the borrowed money did not go into the association. The argument does not seem to be that directors holding the evidence of any particular loan should be excluded from participation in distribution, but that the act of borrowing beyond the limit of law for the association, should defer the legitimate claims of the directors as creditors. It is not yet made clear to what extent, if any, there was an overborrowing. Nor, in the intricacies of facts and figures in the case as presented, can it be assumed that an overborrowing was necessarily an act of gross negligence.

We are not convinced by the appellant of a duty to reverse the findings and conclusions of the auditor and court below, and, therefore, the decree is affirmed.